FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 27, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ZAYN AL-ABIDIN MUHAMMAD HUSAYN, also known as ABU ZUBAYDAH,<br><br>                            Plaintiff,<br><br>   v.<br><br>JAMES MITCHELL, and JOHN JESSEN, also known as BRUCE JESSEN,<br><br>                          Defendants. | NO. 2:23-CV-0270-TOR<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |

BEFORE THE COURT is Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to FRCP 12(b)(1) and 12(b)(6). ECF No. 27. This matter was submitted for consideration with oral argument held on February 15, 2024. The Court has reviewed the record and files herein, the completed briefing, the oral argument of counsel, and is fully informed. For the reasons discussed below, Defendants' Motion to Dismiss, ECF No. 27, is GRANTED.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 1

# BACKGROUND[1]

This case arises from the September 11, 2001 terrorist attack by Al Qaeda on the United States' civilian population. Plaintiff was captured on March 28, 2002, by a joint force of U.S. and Pakistani agents in Faisalabad Province, Pakistan. At that time, U.S. intelligence believed Plaintiff had connections to high-profile jihadists, including within Al Qaeda, and that he was the "number three" man in Al Qaeda. Plaintiff admits that after his capture, he provided valuable information to the Federal Bureau of Investigation (FBI) regarding a planned attack, including details such as the sources he had received money from, where the money was going, the individuals involved, and logistical and operational details. Plaintiff knew so much about the planned attack that with the information Plaintiff provided, the Central Intelligence Agency (CIA) was able to confirm the intelligence and thwart the attack. Plaintiff also knew more about Al Qaeda's September 11, 2001, attack than any other person the U.S. had ever interrogated, as Plaintiff identified Khalid Shaykh Mohammad as "Mokhtar"—the mastermind behind the September 11 attacks—a fact Plaintiff admits had "never been previously confirmed." ECF No. 1 at 26, ¶ 47. Because Plaintiff provided detailed information about terrorist activities, the CIA took over his interrogation and

---

[1] This summary of the facts comes from Plaintiff's Complaint, ECF No. 1.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 2

transferred him to a CIA black site.

The CIA asked the Defendants to propose interrogation techniques that the CIA could use on Plaintiff. Defendants assembled enhanced interrogation techniques which the CIA presented to the Department of Justice's (DOJ) Office of Legal Counsel. DOJ approved 10 of the 12 proposed techniques and after August 1, 2002, Defendants began interrogating Plaintiff, while the CIA observed. Defendants sent CIA Headquarters a summary of Plaintiff's interrogation at the end of each day. Plaintiff's interrogation ended on August 20, 2002. Thereafter, Defendant was transferred by the CIA to various black sites and was eventually transferred to the U.S. base in Guantanamo Bay in September 2006, where he remains. Plaintiff was determined to meet the criteria for designation as an Enemy Combatant. ECF No. 27-1 at 4.

Plaintiff has sued Defendants for torture, non-consensual medical experimentation, war crimes, and arbitrary detention pursuant to the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350.

## DISCUSSION

**A. Motion to Dismiss for Lack of Jurisdiction**

Defendants move to dismiss Plaintiff's complaint for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 27 at 5-12.

Plaintiff's complaint asserts federal jurisdiction under 28 U.S.C. § 1350. Section 1350 provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."

However, Defendants challenge this Court's ability to review the Complaint under the Military Commissions Act, 28 U.S.C. § 2241(e)(2). Additionally, Defendants claim that the political question doctrine divests this Court of jurisdiction, that Defendants are entitled to derivative sovereign immunity, and that Plaintiff has not sufficiently alleged Alien Tort Statute claims.

1. Legal Standards

Federal Rule of Civil Procedure 12(b)(1) permits a party to seek dismissal of an action for lack of subject matter jurisdiction. A defendant may challenge subject matter jurisdiction in one of two ways: through a "facial attack" or a "factual attack." *Leite v. Crane Co.,* 749 F.3d 1117, 1121 (9th Cir. 2014). A facial attack accepts the truth of the plaintiff's allegations but challenges the sufficiency of the complaint's allegation to invoke federal jurisdiction, whereas a factual attack challenges the factual existence of federal jurisdiction. *See id.* Here, Defendants' challenge raises purely legal questions and does not challenge Plaintiff's factual assertions. ECF No. 15. Accordingly, the Court considers the motion by

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 4

evaluating the complaint on its face. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Also, Rule 12(b)(6) provides that a defendant may move to dismiss the complaint for "failure to state a claim upon which relief can be granted." Fed. R. of Civ. P. 12(b)(6). To survive dismissal, a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires the plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements. . ." *Twombly*, 550 U.S. at 555. A plaintiff's "allegations of material fact are taken as true and construed in the light most favorable to the plaintiff[,]" but "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (citation and brackets omitted).

When analyzing whether a claim has been stated, the Court may consider the "complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (*citing Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 5

Fed. R. Civ. P. 8(a)(2). The court may disregard allegations that are contradicted by matters properly subject to judicial notice or by exhibit. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The court may also disregard conclusory allegations and arguments which are unsupported by reasonable deductions and inferences. *Id*. Although the court "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 662.

### 2. Military Commissions Act (MCA)

The MCA deprives a court of jurisdiction over any detention-related claims where the alien is determined to be an enemy combatant or is awaiting such determination. The MCA provides:

> Except as provided in paragraphs (2) and (3) of section 1005(e) of the Detainee Treatment Act of 2005 (10 U.S.C. 801 note), no court, justice, or judge shall have jurisdiction to hear or consider any other action against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States and has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination.

28 U.S.C. § 2241(e)(2).

In *Hamad v. Gates*, the Ninth Circuit explained that a court lacks jurisdiction under Section 2241(e)(2) when the following five elements are satisfied:

> (1) the action is against the 'United States or its agents'; (2) the action relates to 'any aspect of the detention, transfer, treatment,

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 6

> trial, or conditions of confinement of an alien who is or was detained by the United States'; (3) the action relates to an alien who was 'determined by the United States to have been properly detained as an enemy combatant' or an alien awaiting such a determination; (4) the action is an action 'other' than an application for a writ of habeas corpus, which is covered in § 2241(e)(1); and (5) the action does not qualify for an exception under § 1005(e)(2) or (3) of the Detainee Treatment Act of 2005 (DTA), which provide the D.C. Circuit jurisdiction over a narrow class of challenges by enemy combatants.

*Hamad v. Gates*, 732 F.3d 990, 995 (9th Cir. 2013) (internal citation omitted).

Here, all five elements are easily met and accordingly, this Court does not have jurisdiction to proceed.

The only real dispute Plaintiff raises is whether Defendants were "agents" of the United States under the first Section 2241(e)(2) factor. The MCA's legislative history demonstrates that Congress understood this provision would apply to government employees and contractors alike. It passed this legislation specifically to protect individuals, like Defendants, who interrogated enemy combatants:

> [T]here is one issue that really has not come up in this debate, and that is the immunity that is given in this bill to the people who are interrogating the enemy combatants. We need to pass this bill so that interrogations can start up again because without the immunity, anybody who is hired by the United States Government to try to find out whom they are planning on blowing up next would be subject to a lawsuit that would be filed by some attorney that would claim that he was representing the public interest. This is a protection bill for the interrogators. It is something that is needed, and that is another reason why it ought to pass.

152 Cong. Rec. H7947-48 (Sept. 29, 2006) (statement of Rep. Sensenbrenner).

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 7

Plaintiff labels Defendants as "independent contractors," but labels do not determine Defendants' status as agents. Taking Plaintiff's Complaint at face value, Defendants were agents acting on behalf of the CIA. The CIA assumed custody of Plaintiff, detained him at various confidential locations, provided him medical care, fed him, and decided where and how to lodge him. Defendants were only asked to formulate interrogation techniques and, for a limited amount of time, perform the interrogation. The CIA oversaw and approved the interrogation, decided how long it would last, and decided when it would stop. Defendants were required to file daily reports. Absent CIA permission and supervision, Defendants had no independent authority to interrogate Plaintiff. Defendants were therefore agents of the CIA at the time of Plaintiff's interrogation.

Collateral estoppel does not apply to this issue. There was no full and fair opportunity to litigate the identical issue and no final judgment was entered in the prior litigation. *See Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1078 (9th Cir. 2007).

The MCA fully applies to these facts and the Court does not have jurisdiction to proceed.

### 3. *Political Questions Doctrine*

Additionally, Defendants claim that the political questions doctrine divests this Court of jurisdiction. The Supreme Court has long recognized "a narrow

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 8

exception" to the federal courts' duty and responsibility to decide cases, known as the "political questions doctrine." *In re: KBR, Inc.*, 893 F.3d 241, 259 (4th Cir. 2018) (citation omitted). A case or controversy "involves a political question-where there is 'a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it.'" *Nixon v. United States*, 506 U.S. 224, 228 (1993) (quoting *Baker v. Carr*, 369 U.S. 186, 217 (1962)); *see also Baker*, 506 U.S. at 217 (listing six factors under which the political questions doctrine may preclude a court from reaching the merits of a case).

Federal courts will not examine cases involving a political question because doing so encroaches on the constitutional prerogatives of the co-equal branches of government and because they are ill-equipped to decide these cases. *In re: KBR, Inc.*, 893 F.3d at 259. In other words, the Constitution commits political questions to be resolved within "the halls of Congress or the confines of the Executive Branch," not on the steps of a federal courthouse. *Id*. "[M]ost military decisions are matters solely within the purview of the executive branch." *Id*. (citation omitted). As the Fourth Circuit explained:

> Whereas the Constitution confers authority over military affairs in Congress and designates the President as Commander in Chief, "[i]t contemplates no comparable role for the judiciary," and "judicial review of military decisions would stray from the traditional subjects of judicial competence." Given the unprecedented levels at which today's military relies on

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 9

> contractors to support its mission, however, this Court has recognized that a military contractor acting under military orders can also invoke the political question doctrine as a shield under certain circumstances. Accordingly, when we are asked to review a military contractor's actions, we inquire whether such a review would lead to scrutinizing military decisions for which we lack the constitutional warrant and judicial competence. Under this Court's decision in *Taylor*, a suit against a military contractor raises a nonjusticiable political question if either (1) the military exercised direct control over the contractor, or (2) "national defense interests were closely intertwined with the military's decisions regarding [the contractor's] conduct." A case must be dismissed as nonjusticiable if either of these factors is met.

*In re: KBR, Inc.*, 893 F.3d at 259–60 (internal quotations and citations omitted). The political question doctrine is not limited to the military, but also includes other executive agencies such as the CIA. *See e.g., Hmong 2 v. United States*, 799 Fed. App'x. 508, 509 (9th Cir. 2020); *see also, e.g.*, *Harbury v. Hayden*, 522 F.3d 413, 420 (D.C. Cir. 2008).

Here, taking Plaintiff's alleged claims as true as set forth in the Complaint, the CIA had full actual and plenary authority over Defendants. Plaintiff was designated as an enemy combatant and the information sought from him was to prevent further acts of terrorism. Defendants acted at the CIA's direction and accordingly they are entitled to invoke the political question doctrine which also prevents this Court from adjudicating Plaintiff's claim.

### 4. Derivative Sovereign Immunity

Government contractors performing work at the direction of the government are also immune from suit based on derivative sovereign immunity. *See Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18 (1940) and *Filarsky v. Delia*, 566 U.S. 377 (2012). It does not matter whether the contractor was working part-time or full-time. *Filarsky*, 566 U.S. at 389.

Plaintiff's alleged claims taken as true as set forth in the Complaint show that the CIA had full actual and plenary authority over Defendants' conduct. While Plaintiff alleges Defendants exceeded their authority, they were under the supervision and direction of the CIA at all times. Defendants are entitled to derivative sovereign immunity for Plaintiff's claims.

### 5. Insufficient Allegations of ATS Claims

Plaintiff invokes 28 U.S.C. § 1350, the Alien Tort statute (ATS) as a basis for jurisdiction. The ATS provides "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." The Supreme Court has held that this statute does not apply to violations occurring outside the United States. *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 124 (2013) (concluding that "the presumption against extraterritoriality applies to claims under the ATS, and that nothing in the statute rebuts that presumption" and therefore petitioners' case

"seeking relief for violations of the law of nations occurring outside the United States [was] barred").

Plaintiff admits that private conduct without government involvement does not violate the substantive causes of action alleged (other than war crimes). ECF No. 30 at 35. However, as explained above, Defendants acted at the direction, control, and supervision of the CIA. Thus, the MCA applies and this Court has no jurisdiction to proceed.

Plaintiff also alleges that the Defendants effectuated his extended detention. However, the facts in the Complaint clearly show that the CIA detained Plaintiff, not the Defendants. The CIA decided where to detain him and for how long. Defendants had no causative role in the detention of the Plaintiff by the CIA.

### B. Leave to Amend

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a party's pleading "should [be] freely give[n] . . . when justice so requires," because the purpose of the rule is "to facilitate decision on the merits, rather than on the pleadings or technicalities." *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (citation omitted). "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203

F.3d 1122, 1127 (9th Cir. 2000) (*en banc*); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 926 (9th Cir. 2012) (*en banc*).

Here, given the above ruling, the Complaint cannot be cured to allege facts which would give this Court jurisdiction to proceed.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to FRCP 12(b)(1) and 12(b)(6), ECF No. 27, is **GRANTED**.  This case is **DISMISSED with prejudice**.

The District Court Executive is directed to enter this Order and Judgment accordingly, furnish copies to counsel, and **close** the file.

**DATED** February 27, 2024.



THOMAS O. RICE
United States District Judge

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 13